939.15

No. PD-0939-15

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 18 2015

Abel Acosta, Clerk

ALBERT AYALA JR.
PETITIONER

V.

THE STATE OF TEXAS
RESPONDENT.

PETITIONER IN CAUSE NO. F11-42504-L FROM THE FIFTH

JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS AND FOR APPEAL

NO. 05-14-00530-CR FROM THE COURT OF APPEALS FOR THE FIFTH DISTRICT

OF DALLAS

PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

SEP 18 2015

Abel Acosta, Clerk

ORAL ARGUMENT REQUESTED

ALBERT AYALA JR.
T.D.C.J. ID NO. 1925390
BILL CLEMENTS UNIT
9601 SPUR 591
AMARILLO, TEXAS. 79107-6906

# TABLE OF CONTENTS

TABLE OF CONTENTS      2

INDEX OF AUTHORITIES AND STATUTES      3

STATEMENT OF THE CASE      4

QUESTION FOR REVIEW    A. QUESTION      4

REASON TO GRANT RELIEF A. QUESTION      4

QUESTION FOR REVIEW    B. QUESTION      4

REASON TO GRANT RELIEF B. QUESTION      6

AUTHORITIES IN SPURT OF RELIEF      8

# INDEX OF AUTHORITIES

PAGE NUMBER

BRUERY V. STATE, 225 SW. 3d 491, 504 (TEX. CRIM. APP. 2007)                8.

## STATUTES

TEX. CODE CRIM. PRO. ANN. ART. 38.14 (VERNON 2005)                9

PENAL CODE ANN. §19.03 (A)(2)(VERNON 2003)                11

(3.)

## STATEMENT OF THE CASE

### A. PROCEDURAL SUMMARY:

ON APRIL 22, 2014, THE PETITIONARY. ALBERT AYALA JR. ENTERED A PLEA OF NOT GUILTY TO THE CHARGE OF CAPITAL MURDER BEFORE THE HONORABLE JUDGE CARTER THOMPSON, JUDGE PRESIDING OF CRIMINAL DISTRICT COURT NO. 5 AND A JURY (RRV. 3 P. 8) THE JURY FOUND THE DEFENDANT GUILTY OF CAPITAL MURDER, AS CHARGED IN THE INDICTMENT. ON APRIL 24, 2014. (RRV. 5 P 38). THE TRIAL COURT ACESSESED PUNISHMENT OF LIFE IN THE INSTITUTIONAL DIVISON OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE (RRV. 5 P 39). A NOTICE OF APPEAL WAS TIMELY FILED ON APRIL 24, 2014 (CR V. 17). APPELLANT BRIEF WAS TIMELY FILED ON NOVEMEBER 20, 2014. STATE BRIEF WAS FILED ON APRIL 2015. FIFTH COURT OF APPEAL ENTERED JUDGEMENT ON JUNE 23, 2015.

## QUESTION FOR REVIEW

### A. QUESTION:

### B. QUESTION:

## REASON FOR RELIEF

### A. REASON:

PETITIONER SHOWS THE TRIAL COURT ERROR BY FAILING TO GIVE INSTRUCTION THAT THE WITNESS WAS ACCOMPLICE AS A MATTER OF LAW AND NOT LEFT FOR THE JURY TO MAKE THAT DETERMINATION. PETITIONER SHOWS THE EVIDENCE DISPLAYED NITA VASQUEZ ACTIVE PARTICIPATION IN ANY PLOT TO HARM THE DECEASED BY BEING A DECOY FOR THE PERPETRATORS TO GAIN CONTROL AND PHYSICAL ADVANTAGE AGAINST THE VICTIM. NITA ENGAGED IN CONDUCT BEFORE AND DURING. AFTER THE APPARENT ABDUCTION AND OR CONTINUING

(4.)

MISAPPROPRIATION. NITA COULD NOT REMEMBER IF HER MOTHER ANGIE STAYED WITH HER AT THE MERI REST MOTEL (RRV. 3 P. 204) VICKIE TESTIFIED, ADAM AND DANNY AYALA STAYED AT THE MERI BEST MOTEL (RRV 3 P. 94) WHERE THE RECORD IS SILENT BUT THE EVIDENCE SHOWS PART NITA AND ADAM AYALA WERE LOVERS. WHILE ANGIE AND DANNY AYALA WERE LOVERS, BY THE RECORD IT COULD BE DETERMINE DANNY [THE MURDER] ANGIE, ADAM, AND NITA LIVED AT THE MERI MOTEL TOGETHER. NITA DISTANCE HERSELF AS BEING PRESENT BEFORE, AND DURING THE CALL HER MOTHER ANGIE MADE TO BILLY FOR A RIDE (RRV. 3 P. 206) VICKIE, EXPLAINED NITA WAS PRESENT BEFORE AND DURING THE CALL ANGIE MADE TO BILLY FOR A RIDE (RRV. 3 P. 101-102). NITA SHIFT THE BLAME IN HER PARTICIPATION THAT THE PHONE CALLED MADE TO BILLY WHICH ANGIE MADE WAS A PLOT TO ASSULT AND ROBB BILLY AND ANGIE DISCLOSED THIS INFORMATION (RRV 3 P. 206-207) (RRV. 4 P. 21-22) VICKIE MARTINEZ WAS PRESENT PRIOR TO AND DURING THE CALL ANGIE MADE TO BILLY FOR A RIDE. AT NO TIME DID VICKIE HEAR OF A PLOT TO ASSULT AND ROBB BILLY (RRV. 3 P. 102) PITITIONER, SHOWS ANGIE DID NOT SPEAK WITH BILLY UPON HIS ARRIVAL. IT WAS NITA VASQUEZ AND DANNY AYALA WHOM MADE INITITIAL CONTACT WITH BILLY. NITA USED HERSELF AS A DECOY IN DISTRACTING BILLY FOR DANNY TO GAIN ACCESS IN THE VEHICLE. NITA CLAIMED ONE OF THE AYALA BROTHERS DRAGGED BILLY TO THE BACK SEAT AND ADAM AND APPLLANT GOT IN THE BACK SEAT WITH BILLY (RRV. 3 P. 210). VICKIE MARTINEZ WITNESS AFTER BILLY WAS DRAGGED TO THE BACK SEAT BY ONE OF THE AYALA BROTHERS, SHE "VICKIE" SAW NITA, ADAM, APPELLANT, AND DANNY STANDING AROUND THE CAR. THEN ADAM AND DANNY STOP BILLY FROM GETTING OUT THE BACK SEAT (RRV. 3 P. 107). OBSERVING VICKIE FRIST HANDKNOWLEDGE OF NITA PARTICIPATION. AFTER THE ASSULT AND FORCING BILLY TO THE BACK SEAT. THE EVIDENCE SHOWS NITA CONSULTED WITH DANNY AND ADAM THEN THE KIDNAPING, ROBBERY, AND MURDER TOOK PLACE (RRV. 3 P. 107). NITA CONTINUED TO CALL DANNYS PHONE AND BILLYS PHONE (RRV. 3 P. 210) AFTER THE TEXT "NITA NOSE, TOO SHE WANTS HER MONEY!" (RRV. 4 P. 159) AFTER THE ASSULT, ROBBERY, AND MURDER FOR BILLY'S MONEY AND CAR. NITA, NITA'S MOTHER ANGIE AND DANNY AYALA CAME UP WITH A SECLUDED AREA TO DISASSEMABLE BILLY'S CAR AT NITA'S AUNT'S PLACE IN COXVILLE (RRV. 3 P. 217) NITA, DANNY, AND ANGIE

(5.)

WENT TO FRANK'S HOUSE AND PICKED UP APPELLANT AND ADAM TO GET SOME DRUG'S. AND HELP NITA AND DANNY DISASSEMABLE THE CAR(RRV3 P. 215), NITA PROTECTED HER FINANCIAL INTRUST IN OBSERVING THE DISSASSEMABLE OF THE CAR APART. SHE COULD NOT CARRY HEAVY CAR PARTS, BECAUSE SHE WAS SEVEN MONTHS PREGNANT. SHE FURTHER PARTICIPATED IN TRANSPORTATION OF THE CAR PART'S TO DIFFERENT JUNK YARDS OR LOCATION'S FOR SALE (RRV. 3 P.218), REVEIWING NITA'S INVOIVEMENT IN A CUMULATIVE PROBATIVE VALUE NITA IS AN ACCOMPLICE BY LAW AND THIS COURT SHOULD NOT PARAID UNDER THE UBERELLA OF TACTIS AND SCHEM TO SHIELD NITA VASQUEZ PARTICIPATION.

## B. REASON:

THE PETITIONER WAS PREJUDICE BY NITA VASQUEZ THE ACCOMPLICE WITNESS IMMUNITY TO INDICT, LEAVING THE JURY TO VALID LEAGL THEORIES (RRV3 P. 208), NITA VASQUEZ COULD RECALL IF PETITIONER WAS NEAR THE HONDA CAR, WHEN DANNY GOT INTO THE CAR (RRV3 P. 209). NITA VASQUEZ DID NOT KNOW WHO DRAGGED BILLY TO THE BACK SEAT (RRV. 3 P.210). SHE DID NOT KNOW WHICH BROTHER WAS IN THE BACK SEAT WITH BILLY (EVEN THOUGH PETITIONER WEARS PRESCRIBED GLASSES AND DANNY AYALA DOES NOT WEAR GLASSES] (RRV3P210) VICKIE MARTINEZ SAW DANNY AND ADAM GET IN THE BACK SEAT WITH BILLY. (RRV3 P.108) Ms. MARTINEZ CORROBORATES NITA VASQUEZ THAT PETITIONER STANDING ALONE DRUNK AND AND DID NOT PARTICIPATE OR LEAVE WITH DANNY AND ADAM IN BILLY'S CAR. (RRV. 3 P. 109) VICKIE MARTINEZ DID NOT SEE PETITIONER IN OR OUT OF THE BILLY'S VEHICLE. (RRV. 3 P.130) WITHIN SERVAL HOURS OF THE RESENT MURDER OF BILLY, DANNY ALONE AT 7:00 AM PICKED UP NEED NITA AND ANGIE (RRV. 3 P215) NITA SAW BLOOD ON THE CARPET IN THE BACK SEAT (WHICH COULD HAVE CAME FROM THE ASSULT AND DRAGGING OF BILLY'S BODY TO THE BACK SEAT) DANNY TOLD NITA SHE WOULD WOULD NOT SEE BILLY AGIAN (RRV.3 P.216) (RRV.3 P. 210) THIS COULD BE REASONABLE INFER DANNY ADMITTING HE KILLED BILLY THAT IS WHY NITA WOULD NOT SEE BILLY AGAIN. (THE FACT THAT DANNY AYALA PLEAD GUILTY TO MURDERING BILLY BAILEY). IT IS ONLY NITAS TESTIMONY THAT SHE (NITA), ANGIE AND DANNY AYALA WENT TO PICK UP ADAM AYALA AND PETITIONER TO GET DRUG'S AND ASK THEM TO

(6.)

TO DISASSEMBLE BILLY'S CAR. (RRV.3 P.217-218) Mr. HERNANDEZ TESTIFIED PETITIONER TOLD HIM THAT HE (ALBERT AYALA) STABBED SOMEONE (RRV.3 P.175) THE POLICE WERE ADDING ON TO IT PUTTING THEIR OWN STORIES (RRV.3 P.182) THE POLICE TOLD HIM THE VICTIM (BILLY BAILEY) HAD BEEN STABBED AND THE CAR THAT WAS CONNECTED (RRV.3 P.187) Mr. HERNANDEZ TESTIMONY IS SUSPECTED AND DOES NOT PROVIDE A SUFFICIENT NEXUS OF THE HOMICIDAL CONDUCT.

THE RECORDED PHONE CALL BETWEEN PARTICIA WOLYNSKI AND ALBERT AYALA DOES NOT SHOW PETITIONER MURDER BILLY. THE CONVERSATION FABRICATED HYPOTHETICAL TO IMPRESS HIS GIRLFRIEND OF THE LENGTHS HE WOULD GO TO HELP GET HER OUT OF JAIL.

(7.)

## AUTHORITIES IN SUPPORT OF RELIEF

### A. AUTHORITIES:

THERE WAS NO REQUEST IN THE TRIAL COURT THAT THE JURY BE INSTRUCTED THE WITNESS (NITA VASQUEZ) WAS AN ACCOMPLICE AS A MATTER OF LAW; THEREFORE, ANY CHARGE ERROR IS REVERSIBLE ONLY IF EGREGIOUS HARM IS SHOWN. DRUERY V. STATE, 225 SW 3d 491, 504 (TEX. CRIM. APP 2007) TAYLOR V. STATE, 7 S.W. 3d 732, 737 (TEX. APP. HOUSTON [14TH DIST.] 1999, PET. REF'd) ERRORS RESULTING IN EGREGIOUS HARM ARE THOSE THAT AFFECT THE "VERY BASIS OF THE CASE, THOSE DEPRIVING THE DEFENDANT OF A VALUABLE RIGHT, OR THOSE THAT VITALLY AFFECT A DEFENSIVE THEORY." DRUERY, 225 S.W. 3d AT 504.

AN ACCOMPLICE IS AN INDIVIDUAL WHO PARTICIPATES WITH A DEFENDANT BEFORE, DURING, OR AFTER THE COMMISSION OF THE CRIME AND ACTS WITH THE REQUISITE CULPABLE MENTAL STATE, COCKE V. STATE, 201 S.W. 3d 744, 747 (TEX. CRIM. APP. 2006); YOST V. STATE, 222 S.W. 3d 865, 891 (TEX. APP. HOUSTON (14TH DIST.] 2007 PET. DENIED). THE PARTICIPATION MUST INVOLE AN AFFIRMATIVE ACT THAT PROMOTED THE COMMISSION OF THE OFFENSE, WITH WHICH THE ACCUSED WAS CHARGED. PAREDES V. STATE, 129 S.W. 3d 530, 536 (TEX. CRIM. APP. 2004). A WITNESS IS NOT AN ACCOMPLICE MERELY BECAUSE HE/SHE KNEW OF THE OFFENSE AND DID NOT DISCLOSE IT, OR EVEN IF HE CONCEALED IT. DRUERY, 225 S.W. 3d AT 498; COCKE, 201 S.W. 3d AT 747. AN ACCOMPLICE AS A MATTER OF LAW IS ONE WHO IS SUSCEPTIBLE TO PROSECUTION FOR THE OFFENSE WHICH THE ACCUSSED IS CHARGED OR A LESSER INCLUDED OFFENSE. PEREDES, 129 S.W. 3d AT 536; JARNIGAN V. STATE, 57 S.W. 3d 76, 89 (TEX. CRIM. APP. HOUSTON [14TH DIST.] 2001, PET. REF'd) IF THE EVIDENCE CLEARLY SHOWS THAT THE WITNESS WAS AN ACCOMPLICE AS A MATTER OF LAW, THE TRIAL COURT MUST SO INSTRUCT THE JURY. PAREDES 129. S.W. 3d AT 536; 129 S.W. 3d AT 536; GONZALEZ V. STATE 63 S.W. 3d 865, 881 (TEX. CRIM. APP. HOUSTON [14TH DIST] 2001 AFF'd 117 SW. 3d 831 (TEX. CRIM. APP. 2003.

A DEFENDANT HAS A RIGHT TO AN INSTRUCTION ON ANY DEFENSE ISSUED RAISED BY THE EVIDENCE, WHETHER THE EVIDENCE IS WEAK, STRONG, UNIMPEACHED

OR CONTRADICTED, AND REGARDLESS OF WHAT THE TRIAL COURT MAY THINK ABOUT THE CREDIBILITY OF THE EVIDENCE. GRANGER V. STATE, 3 S.W.3d 36,38 (TEX. CRIM. APP. 1999). ARTICLE 38.14 OF THE CRIMINAL CODE OF PROCEDURE PROVIDES THAT "[A] CONVICTION CANNOT BE HAD UPON THE TESTIMONY OF AN ACCOMPLICE UNLESS CORROBORATED BY OTHER EVIDENCE TENDING TO CONNECT THE DEFENDANT WITH THE OFFENSE COMMITTED; AND THE CORROBORATION IS NOT SUFFICIENT IF IT MERELY SHOWS THE COMMISSION OF THE OFFENSE." TEX. CODE CRIM. PROC. ANN. ART. 38.14 (VERNON 2005). THE PURPOSE OF THIS RULE IS TO ASSURE THAT THE JURY DOES NOT CONSIDER THE ACCOMPLICE WITNESS'S TESTIMONY UNLESS IF FINDS THAT THE ACCOMPLICE WITNESS IS TELLING THE TRUTH AND THAT OTHER EVIDENCE CORROBORATES THE DISCREDITED WITNESS'S TESTIMONY. SEE MCDUFF V. STATE, 943 S.W.2d 517,520 (TEX. CRIM. APP. AUSTIN 1997) PET. REFF'd). A WITNESS MAY BE ACCOMPLICE EITHER AS A MATTER OF LAW OR AS A MATTER OF FACT; THE EVIDENCE DETERMINES WHAT JURY INSTRUCTION, IF ANY NEED TO BE GIVEN. COCKE V. STATE, 201 SW.3d 744, 747 (TEX. CRIM. APP. 2006). IF A WITNESS IS AN ACCOMPLICE AS A MATTER OF LAW THE TRIAL COURT IS REQUIRED TO PROVIDE AN ACCOMPLICE WITNESS INSTRUCTION TO THE JURY.

ARTICLE 38.14 DOES NOT DEFINE "ACCOMPLICE WITNESS" BUT A DEFINITION HAS BEEN DEVELOPED THROUGH APPELLATE DECISIONS. AN ACCOMPLICE IS AN INDIVIDUAL WHO PARTICIPATES WITH A DEFENDANT BEFORE, DURING OR AFTER THE COMMISSION OF THE CRIMES AND ACTS WITH THE REQUISITE CULPABLE MENTAL STATE. COCKE, 201 S.W.3d AT 748. PARTICIPATION REQUIRES AN AFFIMATIVE ACT OR OMISSION THAT PROMOTES THE COMISSION OF THE OFFENSE WITH WHICH THE DEFENDANT IS CHARGED. AN INDIVIDUAL IS CLEARLY AN ACCOMPLICE IF SHE, LIKE THE DEFENDANT, COULD BE PROSECUTED FOR THE OFFENSE OR A LESSER OFFENSE. Id. BLAKE V. STATE, 971 S.W.2d AT 455. MERELY THE PRESENCE AT A CRIME SCENE DOES NOT MAKE AN INDIVIDUAL AN ACCOMPLICE. NOR IS AN INDIVIDUAL AN ACCOMPLICE MERELY BECAUSE SHE HAS KNOWLEDGE ABOUT A CRIME AND FAILS TO DISCLOSE THAT KNOWLEDGE. COCKE, 201 S.W.3d AT 748; BLAKE

(9.)

971 S.W. 2d AT 454. THE CORROBORATING EVIDENCE IS SO UNCONVINCING TO SUGGEST THAT PETITIONER SUFFER AN UNFAIR TRIAL DUE TO THE ABSENCE OF THE ACCOMPLICE WITNESS INSTRUCTION AS A MATTER OF LAW. HERRON V. STATE, 86 S.W. 3d 621, 632 (TEX. CRIM. APP. 2002).

## B. AUTHORITIES:

WHEN A PETITIONER QUESTIONS THE SUFFICIENCY OF THE EVIDENCE, THE APPELLATE COURT REVIEWS THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO THE VERDICT. THE COURT MUST DETERMINE WHETHER ANY RATIONAL TIER OF FACT COULD HAVE FOUND EACH ELEMENT OF THE CRIME BEYOND A REASONABLE DOUBT. JACKSON V. VIRGINA, 443 U.S. 307, 319, 99 S.C.T 2781, 2789, 61 L.E.D. 2d 560 (1979); BUTLER V. STATE, 769 S.W. 2d. 234, 239, (TEX. CRIM. APP. 1989). THIS STANDARD OF REVIEW APPLIES TO CIRCUMSTANTIAL EVIDENCE CASES AS WELL AS DIRECT EVIDENCE CASES. HOUSTON V. STATE, 663 S.W. 2d 455, 456 (TEX. CRIM. APP. 1984). TEXAS LAW REQUIRES THAT THE STATE ESTABLISH; (1) THE OFFENSE WAS ACTUALLY COMMITTED; AND (2) THE ACCUSED WAS THE PERSON EITHER COMMITTED OR PARTICIPATED IN THE CRIME. SEE JOHNSON V. STATE, 673 S.W. 2d 190, 197 (TEX. CRIM. APP. 1984) THE STATE MUST PROVE MORE THAN JUST A PLAUSIBLE EXPLANATION OF THE CRIME. REEVES V. STATE, 806 SW.2d 540, 543 (TEX. CRIM. APP. 1990) CERT. DENIED. -U.S. 111 S.C.T. 641, 113 L.E.D 2d 736 (1991). WHILE THE TRIER OF FACT IS THE SOLE JUDGE OF THE WEIGHT AND CREDIBILITY OF THE WITNESS. COE V. STATE, 683, S.W. 2d 431, 438 (TEX. CRIM. APP. 1984); WILLIAMS V. STATE, 692 S.W. 2d 671, 676 (TEX. CRIM. APP. 1984). A GUILTY VERDICT SHOULD NOT BE ALLOWED TO STAND MERELY BECAUSE THE DEFENDANT WAS FOUND TO BE MOST LIKELY PERPETRATOR. A DEFENDANT, EVEN THE MOST LIKELY DEFENDANT. IS PRESUMED TO BE INNOCENT, UNLESS HIS GUILTY IS ESTABLISHED BEYOND A REASONABLE DOUBT. SEE TEX. CODE CRIM. PROC. ANN. ART. 38.03 (VERON SUPP. 1991). SEE ALSO AYDOVINA V. STATE, 143 (TEX. CRIM. 43, 156 SW 2d 983, 984 (1941) PERKINS V. STATE, 32 (TEX. 109, 112 (1869).

(10.)

NO RATIONAL TRIER OF FACT COULD HAVE FOUND BEYOND A REASONABLE DOUBT THAT PETITIONER WAS GUILTY OF CAPITAL MURDER DUE TO LACK OF CORROBORATING EVIDENCE OF STATE'S WITNESS AS TO EACH ELEMENT OF THE OFFENSE OF CAPITAL MURDER. SEE HERRIN V. STATE, 125 S.W.3d 436 (TEX. CRIM. APP. 2002) SEE JACKSON 443 U.S. AT 318,319, 99 S.C.T AT 2788-90; SANTELLAN V. STATE, 939 S.W. 2d 155, 160 (TEX. CRIM. APP. 1997) THE RECORD ESTABLISHES, AT BEST, ONLY A "MERE MODICUM" OF EVIDENCE OF PETITIONER'S GUILT, WHICH WILL NOT SUPPORT A CONVICTION BEYOND A REASONABLE DOUBT. SEE MCGINN V. STATE, 961 S.W. 2d 161, 168 (TEX. CRIM. APP. 1998), (CITING JACKSON, 443 U.S. AT 320, 99 S.C.T AT 2789) PETITIONER WAS CONVICTED OF CAPITAL MURDER UNDER SECTION 19.03 (A) (2) OF THE PENAL CODE TEX. PENAL CODE ANN. §19.03 (A) (2) (VERNON 2003) AS PERTIENT HERE: THE STATUTE PROVIDES A PERSON COMMITS CAPITAL MURDER, IF HE COMMITS MURDER AS DEFINED UNDER PENAL CODE SECTION 19.02 (B) (1) AND INTENTIONALLY COMMITS THE MURDER IN THE COURSE OF COMMITTING ROBBERY. UNDER SECTION 19.02 (B) (1) A PERSON COMMITS AN OFFENSE IF HE INTENTIONALLY OR KNOWINGLY CAUSE THE DEATH OF AN INDIVIDUAL. TEX. PENAL CODE ANN. §19.02 (B) (1) (VERNON 2003) A PERSON COMMITS ROBBERY "IF IN THE COURSE OF COMMITTING THEFT... AND WITH THE INTENT TO OBTAIN OR MAINTAIN CONTROL OF THE PROPERTY HE: (1) INTENTIONALLY, KNOWINGLY OR RECKLESS CAUSE BODILY INJURY TO ANOTHER; OR (2) INTENTIONALLY OR KNOWINGLY THREATENS OR PLACES ANOTHER IN FEAR OF IMMINENT BODILY INJURY OR DEATH". TEX. PENAL CODE ANN. §26.02 (A) (2) (VERNON 2003) PROOF OF THEFT REQUIRES AN UNLAWFUL APPROPRIATION OF PROPERTY WITH INTENT TO DEPRIVE ITS OWNER OF IT. TEX. PENAL CODE ANN. §31.03 (VERNON 2007) INTENT TO STEAL MAY BE INFERED FROM ACTIONS OR CONDUCT. SCOTT V. STATE, 934 S.W. 2d 396, 401 (TEX. APP. DALLAS 1996) NO PET.), CITING JOHNSON V. STATE, 541 S.W. 2d 185, 187 (TEX. CRIM. APP. 1976) THERE IS NO REQUIREMENT THAT PROPERTY STOLEN MUST BE RECOVERD IN WHOLE OR IN PART TO PROVE THE OFFENSE OF ROBBERY.

(11.)

RUSSO, 228 S.W. 3d AT 794, CITING CHANEY V. STATE, 142 (TEX. CRIM. 411, 154 S.W. 2d 459 (TEX. CRIM. APP. 1941). CASE LAW PROVIDES THAT TO PROVE CAPITAL MURDER COMMITTED DURING THE COURSE OF ROBBERY, THE STATE MUST SHOW INTER ALIA, IN ADDITION TO THE MURDER, THAT THE DEFENDANT POSSESSED THE SPECIFIC INTENT TO OBTAIN OR MAINTAIN CONTROL OF THE VICTIM'S PROPERTY EITHER BEFORE OR DURING THE COMMISSION OF THE MURDER. SHUFFIELD V. STATE, 189 SW. 3d 782, 791 (TEX. CRIM. APP. 2006); HERRIN V. STATE, 125 S.W. 3d 436, 441-43 (TEX. CRIM. APP. 2002); CONNER V. STATE, 67 SW. 3d 192, 197-98 (TEX. CRIM. APP. 2001) THE STATE "MUST PROVE A NEXUS BETWEEN THE MURDER AND THE THEFT, IE., THAT THE MURDER OCCURRED IN ORDER TO FACILITATE THE TAKING OF THE PROPERTY. (IBANEZ V. STATE, 749 S.W 2d 804, 807 (TEX. CRIM. APP. 1986) PROOF THAT THE ROBBERY WAS COMMITTED AS AN AFTERTHOUGHT AND UNRELATED TO THE MURDER IS NOT SUFFICIENT, HERRIN 125, S.W. 3d AT 441 CITING CONNER, 67 S.W. 3d AT 197.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED ALBERT AYALA PRAY'S THIS COURT TO GRANT HIS PETITION FOR DISCRETIONARY REVIEW, AND REVERSE AND REMAND FOR A NEW TRIAL OR AQUITTAL.

RESPECTFULLY SUBMITTED

*Albert Ayala Jr.*
ALBERT AYALA JR.

T.D.C.J-ID NO.#1925390
BILL CLEMENTS UNIT.
9601 SPUR 591.
AMARILLO, TEXAS 79107-9606

## CERTIFICATE OF SERVICE

I, ALBERT AYALA, DO HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE ABOVE AND FORGOING PETITION FOR DISCETIONARY REVIEW HAS BEEN FORWARDED BY UNITED STATES MAIL POSTAGE PREPAID FRIST-CLASS, TO THE STATE PROSECUTOR.

ON THIS THE 7TH DAY OF SEPT, 2015.

*Albert Ayala Jr.*
ALBERT AYALA JR.

## INMATE DECLARTION

I, ALBERT AYALA, T.D.C.J-ID NO. 1925390 BEING PRESENTLY INCARCERATED AT THE BILL CLEMENTS UNIT OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE INSTITUTIONAL DIVISON IN POTTOR COUNTY, TEXAS, VERIFY AND DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING STATEMENTS ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

EXECUTED ON THIS THE 7TH DAY OF SEPT, 2015.

*Albert Ayala Jr.*
PETITIONER PRO SE
ALBERT AYALA JR.

(13.)

## CERTIFICATE OF COMPLAINCE

AS REQUIRED BY TEXAS RULES OF APPELLATE PROCEDURE RULE 52.6
I CERTIFY THAT THE PETITION FOR DISCRETIONARY REVIEW DOES NOT
EXCEED 50 PAGES THAT PRECED PAGE 1 OF THE FORM.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE
AND CORRECT.


EXECUTED ON 7TH DAY OF SEPT, 2015


*Albert Ayala Jr.*
PETITIONER AIBERT AYALA, PRO SE

(14.)

AFFIRMED; and Opinion Filed June 23, 2015.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00530-CR

### ALBERT AYALA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5
Dallas County, Texas
Trial Court Cause No. F-1142504-L

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Schenck
Opinion by Justice Schenck

Appellant Albert Ayala, Jr. appeals his conviction for capital murder. In four issues, appellant argues the evidence is legally insufficient to support his conviction and lodges several complaints relating to the jury charge. We affirm his conviction. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

William Joseph ("Billy") Bailey lived modestly from a trust established by his mother for his benefit that provided monthly support payments. Unfortunately, Billy had a drug habit and at some point began to live in his car, a 1999 Honda Accord. Billy developed unhelpful friendships, including a relationship with a woman by the name Angie Vasquez. Angie was Danny Ayala's girlfriend. Danny and Adam Ayala are appellant's brothers. Billy apparently knew appellant and his brothers as well and would occasionally give them rides in his car.

On or about August 26, 2011, Angie Vasquez, appellant, and his brothers, Danny and Adam, were at the apartment of Vicki Martinez, appellant's cousin. The Ayalas hatched a plot to rob Billy of his car. Danny told Angie to call Billy and suggest that she, Angie, needed a ride. Angie borrowed Vicki's cell phone and used it to send a text message to Billy. Billy arrived and quickly discovered that he had been lured under false pretenses. A dispute ensued, during which he refused to take the Ayalas "nowhere." Angie walked away as the Ayala brothers forced Billy into the back seat and drove away from the scene.

Billy was never seen alive again.

Owing to the combined efforts of the Texas Rangers and the Mesquite Police Department, Billy's missing-persons case eventually led to the discovery of his remains. Utilizing call records for Billy, Vicki, and appellant between 11:00 p.m. the night of August 26 and 1:00 a.m. in the morning of the following day, and triangulating from known cell-phone-tower sites, investigators found decomposed remains consisting of approximately sixty percent of a human skeleton in a wooded area near the intersection of Interstates 45 and 20. The officers also found knives at the scene. Dental records later confirmed that the remains belonged to Billy.

Nita Vasquez, the daughter of Angie Vasquez, cooperated with the investigation and testified at trial. On the evening of, and shortly after, the robbery and kidnapping, Nita had also been present at Vicki's apartment and had been privy to the Ayalas' plan to "rough up" and rob Billy. Following the assault and kidnapping, Nita attempted to contact the men, borrowing Vicki's cell phone that created the phone records used to locate Billy's remains. At one point, when she called Billy's cell phone, someone answered it but did not speak, leaving the connection open for some time during which Nita heard Danny and Albert talking about having murdered Billy.

The following day, Nita and Angie met Danny. He was driving Billy's car. Nita observed blood stains in the carpet on the back seat. When she asked Danny what had happened, he answered that she would not see Billy again. Nita then observed all three Ayala brothers, aided by Angie, chopping Billy's car into component parts. Using information obtained from Nita, investigators later identified the auto shop in Mesquite where the Ayalas had sold an engine and transmission belonging to a Honda Accord. The owner of the shop recalled purchasing the parts from two men and one woman whom he readily identified as Nita as she was seven-months pregnant at the time of the offense. The investigators tenaciously worked backwards from the serial and VIN numbers on the various recovered parts and established that the parts had come from Billy's car.

In the weeks following the abduction and murder, appellant placed two calls to his girlfriend's aunt during which he disclosed that he had killed someone—ostensibly as part of a failed plan to help his girlfriend who was herself in prison—and feared the death penalty as a result.

## DISCUSSION

In his first issue, appellant argues the trial court erred in not instructing the jury in connection with the testimony of Nita that she was an accomplice as a matter of law, rather than instructing that she could be considered an accomplice as a matter of fact. In his second issue, he challenges the sufficiency of the evidence. In his third issue, appellant argues the trial court erred in submitting a charge to the jury that presented two alternate grounds, under either of which the jury could find appellant guilty of capital murder. In his final issue, appellant argues the second paragraph of the charge did not track the indictment or satisfy the definition of capital murder, but instead submitted the separate offense of criminal conspiracy. We first consider his challenge to the sufficiency of the evidence.

—3—

## I.  Legal Sufficiency of the Evidence

When conducting a legal sufficiency review, a court must ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). In so doing, we assess the evidence "in the light most favorable to the prosecution." *Id.* This same standard applies equally to circumstantial and direct evidence. *Burden v. State*, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001). After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to an essential element. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992).

A person commits the offense of capital murder if he intentionally commits murder in the course of committing or attempting to commit robbery. TEX. PENAL CODE ANN. § 19.03(a)(2). Evidence is sufficient to support a capital-murder conviction if it shows an intent to obtain or maintain control of property that was formed before *or contemporaneously with* the murder. *Shuffield v. State*, 189 S.W.3d 782, 791 (Tex. Crim. App. 2006). The State must prove a nexus between the murder and theft—in other words, that the murder occurred in order to facilitate the taking of the property. *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986).

Texas law draws no distinctions between principals and accomplices. TEX. PENAL CODE ANN. § 7.01. A person is thus criminally responsible not only for his own conduct but also for an offense committed by the conduct of another if while acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2). This holds equally true in capital-murder cases. A defendant may be convicted of capital murder as a party to the offense if the jury finds that (1) the defendant conspired with the group to commit robbery, (2) the murder occurred in

-4-

furtherance of the robbery, and (3) the murder should have been anticipated as a result of carrying out the robbery. *Ex parte Martinez*, 330 S.W.3d 891, 902 (Tex. Crim. App. 2011).

Viewed through this lens, we have little difficulty finding sufficient evidence to support appellant's conviction. Patricia Wolynski, the aunt of appellant's girlfriend, testified she participated in a recorded phone conversation between herself and appellant on August 31, 2011. She stated appellant told her that he had "f***ed up so bad" and "if I get caught, I'm going to get the death penalty, I can tell you that much." Patricia further stated that appellant told her, "I tried to come up with the money somehow, but it backfired on us." Patricia testified she asked if someone was "getting hurt or anything," and appellant responded "[t]hey won't feel any more pain." She then asked appellant what he had done and in response he spelled out "K-I-L-L." When she questioned appellant whether it was a mistake, he responded that he acted "out of rage," was "just in a desperate mood," and "needed the money." Appellant called Patricia again a few days later. That call was also recorded. During this conversation, Appellant stated that he made seventy-five dollars as a result of the killing. David Hernandez, appellant's former brother-in-law, testified to a conversation with appellant during which he related that he had done "something bad," that he "was sitting in the back seat" and "stabbed somebody."

Several witnesses, including Vicki and Nita, testified to personally observing appellant and his brothers assault and kidnap Billy. They also saw appellant in Billy's car as they all fled. Nita testified her mother told her that appellant and his brothers planned to "rough Billy up" and that when she attempted to call Billy's phone, someone inadvertently answered. With the line open, Nita overheard Danny and appellant discussing whether they had "got[ten] everything" or "if they'd left something behind." Later, police were able to locate Billy's remains by using records of cell phone calls to Billy and appellant's brother, Danny. Nita also testified that she observed them all dismantling Billy's car and selling its parts. When, with Nita's assistance, the

police traced the parts to a Mesquite business, the proprietor confirmed that he received them from two males accompanied by a pregnant woman he identified as Nita.

This and other record evidence more than suffices to support a reasonable juror's conclusion that (1) appellant, acting intentionally and with his two brothers' assistance, intended to assault and rob Billy and (2) during the course of that attack appellant or one of his brothers killed Billy with a knife, later recovered alongside Billy's body. Given the advanced plan to use physical force and the presence of the knives, the jury was within its discretion in concluding that any participant in the attack should have reasonably anticipated Billy's death. *See Ex parte Martinez*, 330 S.W.3d at 902.

Accordingly, we overrule appellant's second issue.

## II.     Alleged Jury Charge Errors

In reviewing charge error, we must first determine whether error exists. *Druery v. State*, 225 S.W.3d 491, 504 (Tex. Crim. App. 2007). If we find error, we must then determine whether the error caused sufficient harm to require reversal. *Id.* The degree of harm necessary for reversal depends on whether the error was preserved by a timely objection or request below. *Id.* Error preserved by a timely objection requires reversal as long as the error is not harmless. *Id.* But when the error is not so preserved, the harm must be "egregious" before reversal is proper. *Id.* An egregious harm is one that goes to the "very basis of the case." *Id.*

### A.     The Accomplice Instruction

In the first of three charge issues, appellant argues for the first time on appeal that Nita was an accomplice as a matter of law and that the trial court erred in submitting an instruction that required the jury to determine whether Nita was an accomplice as a matter of fact. We disagree and find no error, and no harm, egregious or otherwise, in the given instruction.

Texas law requires that where a conviction is based upon an accomplice witness's testimony, the testimony must be corroborated by independent evidence tending to connect the accused with the crime. *Druery*, 225 S.W.3d at 498. An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. *Id.* The witness's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged. *Id.* A witness is not an accomplice witness merely because he or she knew of the offense and did not disclose it, or even if he or she concealed it. *Id.*

A proper accomplice-witness instruction informs the jury that a witness is either an accomplice as a matter of law or an accomplice as a matter of fact. *Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013). The evidence will dictate the type of accomplice-witness instruction that needs to be given, if any. *Id.* A witness is an accomplice as a matter of law when he or she has been charged with the same offense or a lesser-included offense, or when the evidence clearly shows that he or she could have been so charged.[1] *Id.* While the presence or absence of pending charges against the witness is readily discerned, the question of whether a witness "could have been charged" is less certain. What appears to be clear, however, is that a trial judge has no duty to instruct the jury that a witness is an accomplice witness as a matter of law unless there exists "no doubt that the witness is an accomplice." *Druery*, 225 S.W.3d at 498. If the parties present conflicting or unclear evidence as to whether a witness is an accomplice, the jury must first determine whether the witness is an accomplice as a matter of fact. *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006).

---

[1] Furthermore, a witness who is indicted for the same offense as the accused, but is promised immunity if he testifies against the accused, is an accomplice witness as a matter of law. *Blake v. State*, 871 S.W.2d 451, 462 (Tex. 1998). A person who has been indicted is not necessarily guilty, nor is a person who receives immunity from criminal charges from a prosecutor. As discussed below, a trial court's decision to instruct the jury that at witness as a matter of law appears to function effectively as a directed verdict of culpability.

Appellant cites us to no case finding charge error consisting of a trial court identifying a witness as a potential "accomplice in fact" but not declaring that witness to be, conclusively, an "accomplice in law." In determining whether any error is present in the first instance, we are mindful of our position remote from the actual events at trial. While neither party has addressed the question of the standard of review, we note that the Court of Criminal Appeals has not conclusively settled that question either. *But see Smith v. State,* 332 S.W.3d 425, 441 (Tex. Crim. App. 2011) (noting trial judge has "some discretion" in determining whether a witness is an accomplice in law but ultimately avoiding reconsideration of rule treating witness under indictment as *per se* accomplice in law); *see also Paredes v. State,* 129 S.W.3d 530, 537 (Tex. Crim. App. 2004) (noting trial court did not "abuse its discretion" in declining to give any accomplice instruction in fact or law).

Given that the Court of Criminal Appeals has repeatedly held that when the evidence *clearly* shows the witness is an accomplice witness as a matter of law, a trial court must instruct the jury accordingly, one might conclude that in determining whether the witness is an accomplice as a matter of law, the trial court is deciding a purely legal issue rather than a mixed question of law and fact.[2] *Smith,* 332 S.W.3d at 439. In either case, the task on appeal is likely to be similar. As juries in criminal cases are generally not given special issues to answer and we have no appeal from an acquittal, we will normally be forced to presume that jurors, in returning a verdict of guilty, found the witness to be an accomplice and found sufficient non-accomplice evidence to convict in any case where there is at least some evidence of complicity of a witness.[3] Thus, regardless of whether juries are given an in-law or in-fact instruction, review the harm

---

[2] While the question here arises in connection with the accused's right to a fair trial, we note that the criminal courts are historically ill equipped to render such summary adjudications. This may explain why the accomplice as a matter of law instruction has been historically confined to circumstances of a witness that has been previously convicted or is at least under a pending indictment for the same criminal offense as the accused at the time of his trial.

[3] Although there may be cases where a jury is erroneously given an accomplice-in-fact instruction despite no evidence of witness complicity, there could be no error in denying the accomplice-in-law instruction.

from any alleged error in giving an accomplice in-fact but not in-law instruction will require review to confirm the presence of non-accomplice evidence connecting the defendant to the offense. *Druery*, 225 S.W.3d at 500. Because we find the evidence of Nita Vasquez's involvement too weak to compel an instruction as a matter of law regardless of the standard, and because there was no harm, much less egregious harm to appellant, in this case, we have no further need to explore the standard of review issue.

In particular, there is little basis for treating Nita as an accomplice as a matter of "law" or "fact." The record here shows only that when Billy arrived at Vicki Martinez's apartment, Nita went to Billy's car to have a conversation with him and asked him for a lighter. Immediately thereafter, appellant and his brothers dragged Billy into the back seat and drove off. The next morning, Nita met with her mother and Danny who was driving Billy's car and observed appellant and his brothers strip Billy's car of its parts and sell the parts at different locations. To be sure, it is possible that Nita's conversation with Billy was intended to distract him, but the record contains no proof to that effect and certainly not proof sufficient to remove the question from the realm of reasonable debate sufficient to render it one of law rather than fact. It is equally possible that Nita was merely aware of the planned offense and failed to disclose it or that she was simply present during the course of appellant's offense, which would not entitle appellant to even an accomplice in fact instruction in either case. *Druery*, 225 S.W.3d at 498. There is also evidence Nita went with other individuals to sell parts from Billy's car, but it is not clear she did more than observe. *Id.* at 500. Although Nita testified she was granted immunity "for any type of criminal behavior . . . in this case," the prosecutor stated that he did not believe Nita was "involved in this criminally."

In all events, as appellant failed to request an accomplice-witness instruction or object to the jury charge as given, he must show egregious harm to secure reversal for any jury charge

–9–

error. *See Druery*, 225 S.W.3d at 504. In reviewing for egregious harm, we consider the entire jury charge, the state of the evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *DeBlanc v. State*, 799 S.W.2d 701, 709 (Tex. Crim. App. 1990) (en banc). Here, the instruction properly informed the jury that if it found Nita to be an accomplice, then it could not convict appellant on her testimony unless there is also some non-accomplice evidence connecting appellant to the offense. As that non-accomplice evidence abounded in this case, we next consider the arguments of counsel. *Id.* The State correctly reminded the jury that if it found Nita to be an accomplice, "then in order to convict Mr. Ayala of capital murder, . . . we've got to bring you more evidence besides Nita Vasquez" and fairly summarized the other evidence connecting appellant to the murder. Appellant's counsel in turn made use of the instruction, urging the jury to discount Nita's testimony on the theory that she was "in on the whole deal because her momma got her to . . . distract [Billy]." Reviewing the record as a whole, we cannot find any harm, much less egregious harm, to appellant. *Id.* Accordingly, we overrule appellant's first issue.

## B.    Application Paragraphs

Arguing his third and fourth issues together, appellant argues the jury charge presented two alternate grounds, under either of which the jury could find appellant guilty of capital murder, and that the second of these would support a conviction only as a co-conspirator to commit felony murder, not capital murder. Appellant urges that the jury charge allowed the jury to render a general verdict on capital murder without unanimously agreeing to which act appellant was guilty of committing, either capital murder or conspiracy to commit capital murder. Appellant contends that because of the way it was charged, the jury was improperly permitted to find him either guilty of capital murder as charged in the indictment, or guilty of

conspiracy to commit capital murder under section 15.02 of the penal code, which was not charged in the indictment.

Appellant is mistaken. The court's charge did not instruct the jury to consider whether appellant was guilty of conspiracy. Under Texas law, "[a] person commits criminal conspiracy if, with intent that a felony be committed, he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and he or one or more of them performs an overt act in pursuance of the agreement." TEX. PENAL CODE ANN. § 15.02. The court's charge did not instruct the jury to consider whether appellant was guilty of the separate offense of criminal conspiracy. Instead, the court's charge merely contained an alternative "parties" charge as provided in section 7.02(b). Section 7.02(b) provides as follows.

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* § 7.02(b).

It is well accepted that the law of the parties may be applied to a case even though no such allegation is contained in the indictment. *Montoya v. State*, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989). Additionally, regardless of whether it is pleaded in the charging instrument, liability as a party is an available legal theory if it is supported by the evidence. *In re State ex rel. Weeks*, 391 S.W.3d 117, 124 (Tex. Crim. App. 2013).

Here, the evidence showed appellant, Angie, Danny, and Adam all conspired to commit robbery of Billy's car and that appellant killed Billy in furtherance of the robbery. Thus, the jury charge properly charged appellant with two equally viable, alternative legal theories of capital murder, not two separate offenses. *See Holford v. State*, 177 S.W.3d 454, 462-63 (Tex. App.— Houston [1st Dist.] 2005, pet. ref'd) (concluding that a jury charge properly permitted to find a

-11-

defendant guilty of capital murder upon a finding that either the defendant committed the capital murder or that the defendant was criminally responsible for the murder under the law of the parties or as a conspirator). Accordingly, we overrule appellant's third and fourth issues.

## CONCLUSION

Because we have overruled all of appellant's issues, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

140530F.U05

−12−



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALBERT AYALA, JR., Appellant

No. 05-14-00530-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 5, Dallas County, Texas
Trial Court Cause No. F-1142504-L.
Opinion delivered by Justice Schenck.
Justices Bridges and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 23rd day of June, 2015.